# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR ANTHONY VAZQUEZ, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: SA CV 16-02078 AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

**I.    BACKGROUND**

Plaintiff Cesar Anthony Vazquez filed an application for disability benefits under Title II of the Social Security Act on June 26, 2013. After denial on initial review and on reconsideration, a hearing took place before an Administrative Law Judge ("ALJ") on May 29, 2015. In a written decision dated July 10, 2015, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act ("the Act") since June 26, 2013, the date the application was filed. The Appeals Council declined to set aside the ALJ's unfavorable decision in a notice dated September 21, 2016. Plaintiff filed a Complaint herein on

September 29, 2017, seeking review of the Commissioner's denial of his application for benefits.

In accordance with the Court's Order Re: Procedures in Social Security Appeal, the Plaintiff filed a memorandum in support of the complaint on September 29, 2017, ("Pl. Mem."); the Commissioner filed a memorandum in support of her answer on December 22, 2017 ("Def. Mem."); Plaintiff a reply on January 5, 2018. This matter now is ready for decision.

## II.   DISPUTED ISSUES

As reflected in the parties' memoranda, the disputed issues raised are as follows:

1.   Whether the ALJ failed to properly consider the claimant's testimony.

2.   Whether the ALJ failed to resolve a conflict between the Vocational Expert's testimony and the Dictionary of Terms ("DOT").

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more

than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## IV. FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Id*. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Id*. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Id*. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. *Id*. The claimant has the burden of proving that he is unable to perform past relevant work. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a *prima facie* case of disability is established. *Id*. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. *Id*. The determination of this issue comprises the fifth and final

step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Lester*, 81 F.3d at 828 n.5; *Drouin*, 966 F.2d at 1257.

## V. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2013, his application date. (Administrative Record ("AR") 38.) At step two, the ALJ found that Plaintiff had the following severe impairments: left shoulder acute rotator cuff tear and acromioclavicular arthritis; right shoulder rotator cuff tear; lumbar degenerative disc disease; and history of L4-5 discectomy in 2007 with subsequent redo in 2008. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 39.) At step four, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"): occasionally able to lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; occasionally push or pull with bilateral upper extremities; frequently climb ramps/stairs, stoop, kneel, crouch, and crawl; occasionally climb ladders/ropes/scaffolds; never reach overhead with the left upper extremity; and occasionally reach overhead with the right upper extremity. (AR 39-42.) The ALJ determined that Plaintiff was capable of performing his past relevant work as a salesperson and, therefore, was not disabled. (AR 42-43.)

## VI. DISCUSSION

### A. Whether the ALJ properly considered the claimant's testimony.

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). Where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and

4

the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Since the Commissioner has not argued that there was evidence of malingering and that a lesser standard consequently should apply, the "clear and convincing" standard applies to the ALJ's adverse credibility determination. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (applying "clear and convincing" standard where the government did not argue that a lesser standard should apply based on evidence of malingering).

"General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138. An ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissive grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). A reviewing court should not have to speculate regarding the ALJ's grounds for rejecting a claimant's subjective symptom testimony, *Bunnell*, 947 F.2d at 346, and "implicit" findings that a claimant's testimony is not credible are insufficient. *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990).

Here the ALJ concluded that she did not believe that Plaintiff's symptoms were as severe as he alleged because Plaintiff did not receive treatment generally expected of a person suffering from a disabling impairment. (AR 41-42.) Specifically, the ALJ relied upon: (1) significant gaps in Plaintiff's medical treatment, with only infrequent trips to the doctor for his alleged disabling symptoms; (2) Plaintiff's previous surgery was generally effective in relieving the

symptoms; and (3) Plaintiff's use of medications did not suggest debilitating symptoms. (AR 41-43.) Plaintiff argues that these reasons were not sufficient to discredit his testimony. For the reasons discussed below, the Court finds that the reasons were specific and legitimate bases for an adverse credibility determination.

The first reason offered by the ALJ is that Plaintiff's record had significant gaps in treatment and displayed "relatively infrequent trips to the doctor for allegedly disabling symptoms." (AR 41-42.) Plaintiff argues that these gaps in treatment were the result of Plaintiff's becoming uninsured, and points to his testimony that he could not afford to see doctors between October 2013 and February 2015. (*See* AR 73-74.) Plaintiff also notes that a person need not be totally disabled or comatose to qualify as disabled. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

When assessing credibility, the ALJ may properly rely on inadequately explained or unexplained failure to seek treatment. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Notwithstanding Plaintiff's proffered explanation, the Commissioner correctly points out that the medical record reveals significant gaps during which the Plaintiff did not seek treatment for many of his alleged musculoskeletal impairments – and in particular, his back which served as a chief basis for his disability – even after Plaintiff became re-insured. (*See* AR 384-421, 488-539.) The medical visits occurring after February 2015 indicate Plaintiff sought treatment for his clavicle and right shoulder injuries sustained when he fell from the balcony. (AR 389-390, 393-395, 401, 404, 416, 436.) Plaintiff's explanation that he was unable to obtain treatment because he was uninsured does not entirely explain his extended failure to seek treatment or to mention his alleged back pain during physical examinations. As such, the ALJ appropriately took this fact into consideration when deciding to discount the Plaintiff's testimony. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n. 2 (9th Cir. 2015).

The second reason offered by the ALJ is that Plaintiff's surgeries were generally effective in relieving his symptoms. (AR 42-43.) Plaintiff complains that the ALJ failed to identify the page in the record where petitioner testified that the surgery was effective. He also argues that there was testimony contradicting the ALJ's statement, namely, Plaintiff's testimony that his back surgery "obviously" made him feel worse because it resulted in permanent nerve damage down his leg. (AR 58.)[1]

Contrary to Plaintiff's suggestion, the ALJ did not mischaracterize the evidence. During the hearing, Plaintiff testified that the surgery on his left shoulder was successful and that his shoulder had "completely healed" six to eight months after the surgery. (AR 41-42, 62, 69-70.) Plaintiff's medical records confirm that his left shoulder pain improved after surgery. (AR 408.) With regard to Plaintiff's back impairment, the record reveals he underwent back surgery in 2008. (AR 58, 327.) The only reference to back pain in the record is one occasion in June 2012, when Plaintiff informed his physician his back pain "fluctuated" and that symptoms were relieved by massage. (AR 311.) Notably, Plaintiff's physician did not document symptoms of back pain during examinations in July 2013 or April 2015. (AR 300-302, 401-403.) Furthermore, Plaintiff testified that at the time of the hearing that he was receiving treatment for his right shoulder and collarbone as a result of a recent fall from a balcony; he did not mention undergoing continued treatment for his back. (*See* AR 61, 63, 74-75.) In fact, Plaintiff said that although the fall from the balcony had caused him to suffer back pain so that he remained in bed for about a week, Plaintiff's back had recovered and he "felt better." (AR 70.) Thus, the record contains substantial evidence supporting the finding that Plaintiff's surgeries were generally effective in relieving Plaintiff's pain. *See Celaya v. Halter*,

---

[1] Plaintiff's counsel acknowledged that Plaintiff's medical records contained no documentation confirming Plaintiff's alleged nerve damage in his left leg. (AR 56-57.)

7

332 F.3d 1177, 1181 (9th Cir. 2003) (concluding that the ALJ appropriately rejected the plaintiff's subjective complaints of pain by relying upon medical evidence suggesting that the underlying complaints upon which her reports of pain were predicated had come under control). Further, where the evidence could be subject to more than one interpretation, the ALJ's interpretation must be upheld if that interpretation is rational, as it is here. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

Third, the ALJ found that Plaintiff's "use of medication does not suggest the presence of impairments which is more limiting than found in this decision." (AR 42.).

To the extent that the ALJ determined that Plaintiff's medication use suggested that his pain was satisfactorily resolved, the record supports that finding. According to Plaintiff, he had been "constantly treated" for his back pain and the numbness in his left leg and "that's why I'm taking the pain medication." (AR 57.) Yet, Plaintiff received no prescription pain medication during the period from approximately October 2013 to the end of 2014. (AR 73-74.) According to Plaintiff, during this time, he took prescription painkillers "as needed, not as regular as regular as you're supposed to." (AR 74.) Plaintiff explained that he took the prescription medication once every two or three days and also took some over-the-counter pain medication. (AR 74.) Though it occurred during the period in which the Plaintiff was uninsured, the ALJ properly considered it because it suggests that Plaintiff's need for pain medication is not as significant as he alleges and that his impairments can be effectively controlled with medication. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (finding that treatment with over-the-counter pain medication is sufficient to discount a claimant's testimony regarding the severity of the impairment); *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"); *see also*

*Abreu v. Astrue*, 303 F. App'x. 556, 558 (9th Cir. 2009) (holding that substantial evidence supported the ALJ's credibility findings where ALJ observed that claimant mostly saw a doctor for medication refills and opined that "[f]or the most part, medication regimens appear to be effective in pain control").

The ALJ also found that there was evidence that Plaintiff was "not entirely compliant in taking prescribed medications," and explained that his non-compliance suggested that his impairments were not as limiting as he claimed them to be. (AR 42.) Plaintiff contends that the ALJ erroneously considered his failure to take his prescribed hypertension medication because the ALJ did not consider hypertension to be a condition capable of reducing Plaintiff's RFC.

To begin with, it is not clear that the ALJ could not consider Plaintiff's non-compliance with regard to his hypertension medication in making a credibility determination. *See generally Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (an ALJ may consider a claimant's failure to follow prescribed pain treatment as a basis for finding the complaint unjustified or exaggerated). Nevertheless, assuming that the ALJ improperly relied upon Plaintiff's failure to take his prescribed hypertension medication, the error is harmless in light of the other sufficiently clear and convincing evidence supporting her credibility determination. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (where the ALJ presented four other independent proper bases for discounting the plaintiff's testimony, reliance on the plaintiff's continued smoking to discredit her, even if erroneous, amounts to harmless error); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless).

Finally, Plaintiff contends that the ALJ erred in discounting Plaintiff's daily activities as evidence of his limitations. The ALJ addressed Plaintiff's daily activities as follows:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

(AR 42.)

Because it was not the sole reason for her decision, the ALJ permissibly considered the lack of objective medical evidence supporting Plaintiff's alleged limitations as negatively affecting his credibility. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ, however, could not properly reject Plaintiff's daily activities merely because they "could not be objectively verified." *See Moseley v. Colvin*, 2013 WL 6044316, at *2 (C.D. Cal. Nov. 12, 2013); *Bernal v. Astrue,* 2011 WL 1790052, at *6 (C.D. Cal. May 9, 2011); *Haller v. Astrue,* 2008 WL 4291448, at *5 (E.D. Cal. Sept. 18, 2008). Nevertheless, as discussed above, the error was harmless because the ALJ provided other sufficiently clear and convincing legitimate reasons for her credibility assessment.

### B. Whether the ALJ failed to resolve a conflict between the Vocational Expert's testimony and the DOT.

Plaintiff argues that the ALJ failed to resolve a conflict that was created between the vocational expert's ("VE") testimony and the DOT. In relevant part, the ALJ determined that Plaintiff had an RFC that allowed for reaching overhead with his right arm occasionally, and never allowed for reaching overhead with his

left arm. During the hearing, the VE testified that a claimant with Plaintiff's RFC could perform Plaintiff's past relevant work as a salesman, graphic art (DOT 254.251-010) an occupation which the DOT notes requires "frequent reaching." Reaching is defined in Social Security Ruling 85-15 as "extending the hands and arms in any direction." The VE did not explain how a person limited to reaching overhead with his right arm occasionally and never with his left arm, could perform a job that requires frequent reaching. Plaintiff notes that the ALJ has a duty to fully and fairly develop the record, *see Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983), and argues that the ALJ's failure to solicit the VE's explanation for the discrepancy amounts to reversible error. The Commissioner agrees that an apparent conflict between VE testimony and the DOT must be resolved, but argues that there is no such conflict in this case.[2]

As the Ninth Circuit has made clear, if a VE's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v Colvin*, 844 F.3d 804, 807 (9th Cir. 2016); *see Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (an ALJ must ask a VE if the evidence he or she is providing is consistent with the DOT and must "obtain a reasonable explanation for any apparent conflict"). A conflict must be "obvious or apparent" to trigger the ALJ obligation to inquire further. *Gutierrez*, 844 F.3d at 808.

---

[2] The Commissioner's contention that the Plaintiff waived this issue by failing to raise it at the administrative hearing is unpersuasive. Plaintiff's failure to raise a DOT conflict during the administrative hearing does not constitute a waiver because the ALJ retains an affirmative duty to reconcile apparent conflicts between the VE and the DOT through testimony. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017); *see also Shaibi v. Berryhill*, 870 F.3d 874, 882 (9th Cir. 2017) ("It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises a conflict before the agency.") (citing SSR 00-04p).

Here, the VE testified that her opinion was consistent with the DOT. (AR 76, 82.) Nevertheless, the Court must determine whether an apparent conflict existed such that the ALJ was required to obtain an explanation from the VE.

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected.

*Id.* Where "the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required." *Id*. It follows that the more obscure the job, the less likely common experience will dictate the result. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017); *see, e.g.*, *Cochrane v. Berryhill*, 260 F. Supp. 3d 1317, 1336 (D. Or. 2017) ("[W]hile anyone who has walked into a corner grocery store may be able to observe whether a cashier frequently reaches overhead, the same cannot be said for a photofinishing counter clerk which is a more specific position.").

The decision in *Gutierrez* is instructive to the Court's analysis. There, the claimant could not reach above shoulder level with her right arm. 844 F.3d at 807. The VE opined that she could work as a cashier. The ALJ did not specifically question the VE about how the claimant could perform that work in light of her inability to reach overhead with her right arm. *Id*. The claimant argued that the ALJ should have recognized a conflict between the DOT and the VE's testimony and should have questioned the VE more closely. *Id*. The Ninth Circuit rejected the argument, explaining that "reaching" generally connotes extending the hands in any direction and not all jobs involve reaching overhead. *Id*. The Court concluded that the ALJ did not commit error because, based on common experience, it is "unlikely and unforeseeable" that a cashier would need to reach overhead, and even more rare for one to need to reach overhead with both arms. *Id.* at 808-09 & 809 n.2.

Here, the VE testified that Plaintiff could perform work as a salesman, graphic art (DOT 254.251-010). The DOT's description of the occupation's duties states that a salesman, graphic art:

> Sells graphic art, such as layout, illustration, and photography, to advertising agencies and industrial organizations for use in advertising and illustration: Plans and sketches layouts to meet customer needs. Advises customer in methods of composing layouts, utilizing knowledge of photographic and illustrative art and printing terminology. Informs customer of types of artwork available by providing samples. Computes job costs. Delivers advertising or illustration proofs to customer for approval. May write copy as part of layout.

DOT 254.251-010.

Nothing in the description of the position of salesman, graphic art involves duties that would require overhead reaching. Indeed, Plaintiff testified that as he performed it, the position required reaching forward to place things onto tables, but did not indicate that any of the duties of his previous work required him to reach overhead. (*See* AR 78-79.) Furthermore, the occupation of a salesman, graphic art is relatively familiar, and nothing about the "essential, integral or expected" requirements of the job would require overhead reaching, particularly the bilateral or frequent overhead reaching Plaintiff was incapable of performing. In sum, considering Plaintiff's testimony and the DOT description and applying a common sense approach, the Court finds that the VE's testimony did not present any apparent or obvious conflict requiring resolution by the ALJ. *See Bryant v. Berryhill*, 2017 WL 2835051, at *9 (C.D. Cal. June 30, 2017) (finding that the record did not reflect an obvious or apparent conflict between the vocational expert's testimony that Plaintiff could perform work as a truck driver given his

limitations on overhead reaching and the DOT); *Barron v. Colvin*, 2017 WL 417192, at *4 (C.D. Cal. Jan. 31, 2017) (finding no apparent or obvious conflict between the DOT and VE's testimony that the plaintiff could perform work as information clerk, small products assembler and counter clerk given the requirement that Plaintiff needs to stand or stretch at least ten percent of the day), *judgment entered*, 2017 WL 445228 (C.D. Cal. Jan. 31, 2017); *see also Feibusch v. Astrue*, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008) (citations omitted) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling."); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (person with limited use of one arm could perform jobs requiring frequent reaching, handling, and fingering, and therefore there was no conflict between DOT and vocational expert's testimony to that effect).

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 2/20/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE